# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **COLLIN STREET BAKERY, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 17-CV-_____ |
| | § | |
| **LANDMARK TECHNOLOGY, LLC,** | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S COMPLAINT

Plaintiff Collin Street Bakery, Inc. ("Collin Street Bakery") for its Complaint against Defendant Landmark Technology, LLC for Declaratory Judgment of Non-Infringement of United States Patent No. 6,289,319 hereby alleges, on knowledge of its own actions and on information and belief as to all other matters, as follows:

### Introduction

1. Landmark Technology, LLC ("Landmark") is erroneously presently seeking license fees from Collin Street Bakery for alleged patent infringement of United States Patent No. 6,289,319 ("the '319 Patent"). Collin Street Bakery brings this action seeking a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '319 Patent.

### Parties

2. Plaintiff Collin Street Bakery is a Texas corporation with its principal place of business at 401 W. 7th Avenue, Corsicana, Texas 75151.

3. On information and belief, Defendant Landmark is a Delaware limited liability company with its principal place of business at 329 Laurel Street, San Diego, California 92102; and a recent office at 719 W. Front Street, Suite 157, Tyler, Texas 75702.

## Jurisdiction and Venue

4. The Court has original and exclusive subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this Complaint states claims arising under an Act of Congress relating to patents, 35 U.S.C. § 271. The Court also has original and exclusive subject matter jurisdiction over these claims because this Complaint arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 *et seq.,* based on the declaratory judgment sought by Collin Street Bakery due to Landmark's meritless accusations of alleged patent infringement.

5. Landmark has a well-documented history of sending demand letters accusing companies of infringing Landmark's rights regarding the '319 Patent and related patents, offering to provide the alleged infringers a non-exclusive license to use the patent(s) at issue for a fee and suing these companies if they do not pay Landmark for a license to use the subject patent(s).[1] Collin Street Bakery received such a demand letter from Landmark in December 2016. Landmark's demand letter to Collin Street Bakery, both separately and taken together with Landmark's extensive history of filing patent infringement lawsuits regarding the '319 Patent and other related patents, exemplifies the actual case or controversy under 28 U.S.C. §§ 2201 and 2202 arising from Landmark's demand letter to Collin Street Bakery.

6. The Court has personal jurisdiction over Landmark based on Landmark's extensive contacts with the State of Texas. Landmark has regularly, continuously and systematically availed itself of the Texas federal district courts, repeatedly using Texas courts as Landmark's preferred forum for asserting alleged infringement of the '319 Patent and

---

[1] Landmark has been involved in over one hundred lawsuits in which Landmark alleges patent infringement. Landmark filed more than sixty-five (65) of these lawsuits in the State of Texas since 2011. Additionally, Landmark has filed at least 33 lawsuits related to alleged infringement of the '319 patent since Septeber 2008.

related patents. Landmark has purposefully and repeatedly directed its activities at residents of Texas. Landmark also maintains or maintained an office in Texas. Thus, Landmark has sufficient minimum contacts with the State of Texas to satisfy the Texas long-arm statute and Constitutional due process requirements because Landmark regularly conducts business activities in Texas.

7. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b), as a substantial part of the events giving rise to the claims in this Complaint occurred in this Judicial District and Collin Street Bakery's principal place of business is in this Judicial District.

## Factual Background

### A. General Background

8. On information and belief, Landmark is an entity commonly referred to as a patent troll whose business activities solely consist of sending demand letters seeking patent license fees and receiving license fees in return, or filing lawsuits against purported patent infringers who fail to pay the license fee demanded. On information and belief, Landmark claims to be the exclusive licensee of the '319 Patent with the right to enforce the '319 Patent. Landmark, by its own admission, files patent infringement lawsuits against companies that refuse to pay the license fee sought by way of Landmark's licensing demand letters. See e.g., *Fabletics, LLC v Landmark Technology LLC*, No. 3:16-cv-04831 (N.D. Cal. 2017); *Tatcha, LLC v. Landmark Technology LLC*, No. 3:17-cv-00075 (N.D. Cal. 2016); *Landmark, LLC v. G. Stage Love.com Inc.,* No. 3:16-cv-00760 (S.D. Cal. 2016); *Landmark, LLC v. Canada Drugs L.P*., No. 3:16-cv-00558 (S.D. Cal. 2016); *Landmark Technology, LLC vs Assurant, Inc.,* No. 6:15-cv-00076 (E.D. Tex. 2015);

*Landmark Technology, LLC v. Ace US Holdings, Inc.; Ace Limited and Ace USA, Inc.,* No. 6:15-cv-00437 (E.D. Tex. 2015); *Landmark, LLC v. YOOX Corp.*, No. 6:15-cv-00069 (E.D. Tex. 2015).

9. On information and belief, Landmark has filed over one hundred (100) lawsuits against various companies asserting claims based on the '319 Patent and patents related to the '319 Patent.

10. None of the numerous lawsuits involving Landmark's attempts to enforce the '319 Patent and other patents has made it as far as claim construction. In fact, very few Defendants have ever filed an answer. The remaining cases appear to have been resolved prior to the answer filing deadline.

B. **Landmark's Demand to Collin Street Bakery**

11. Landmark has accused Collin Street Bakery of infringing the '319 Patent. Attached hereto as **Exhibit "A"** is a copy of Landmark's Demand Letter, which Collin Street Bakery received on or about December 25, 2016 (the "Demand Letter"). The Demand Letter was sent to Collin Street Bakery at its home office address of 401 W. 7th Ave., Corsicana, TX 75110. The Demand Letter contends that "Collin Street Bakery's data processing systems, particularly https://www.collinstreet.com/cart/," infringe the '319 Patent. See Ex. A at 1; see also Id. at 2 ("[T]he specific functionalities implemented by Collin Street Bakery using their servers and devices interfaced to Collin Street Bakery's web servers constitutes use of the technology taught within the meaning of Claim 1 of the '319 Patent.")

12. Landmark's Demand Letter provides Collin Street Bakery the option to pay $45,000 for a non-exclusive license to Landmark's patent portfolio, including the '319 Patent, or be sued by Landmark, as their offer "will not be available in the event of litigation." See Ex. A at 2.

13. Collin Street Bakery had no knowledge of Landmark or the '319 Patent until receipt of the Demand Letter.

C. **The '319 Patent**

14. The '319 Patent, entitled "Automated Business and Financial Transaction Processing System," issued on or about September 11, 2001. The named inventor of the '319 Patent is Lawrence B. Lockwood ("Lockwood"). Attached hereto as **Exhibit "B"** is copy of the '319 Patent.

15. The '319 Patent contains a single independent patent claim ("Claim 1") whose field of invention is "an automatic data processing system for processing business and financial transactions between entities from remote sites." See 'Ex. B, Col. 6, lns. 7-9. In fact, as the Patent Specification states: "*The principal object of this invention is to provide an economical means for screening loan applications.*" See Ex. B, Col. 1, lns. 45-46 (emphasis added). Other objects of the invention include: "a system that ties together financial institution data processing, the computer services of a credit reporting bureau, and a plurality of remote terminals. *Each remote terminal displays the live image of a fictitious loan officer who helps the applicant through an interactive series of questions and answers* designed to solicit from the applicant all the information necessary to process his loan application. See Ex. B, Col. 1, ln. 62 – Col. 2, ln 2. (emphasis added).

D. **The '319 Patent's Prosecution History**

16. Lockwood, the patent "Applicant," filed a "continuation-in-part" patent application in 1986 which essentially continued and amended an original patent application he had filed in 1984. This continuation-in-part patent application was rejected by the U.S. Patent and Trademark Office ("USPTO") in 1988 and subsequently abandoned. Thereafter, between 1988 and 1993, Lockwood sequentially filed four additional "continuation" patent applications, each having

essentially identical patent specifications as the 1986 filing. All of these applications were also rejected by the USTPO and subsequently abandoned. Finally, on November 30, 1994, Lockwood filed yet another patent application, U.S. application no. 08/347,270 (the "270 Application"), which uses the same patent specification he had used in his five previous patent applications. The '270 Application ultimately became the '319 Patent.

17. When Lockwood filed the '270 Application in 1994, he called the application an "Automatic Loan Processing Terminal System." The USPTO examiner initially rejected the '270 Application under 35 U.S.C. § 101 as being directed to a method of doing business and not patentable subject matter; under 35 U.S.C. § 112 as being indefinite, non-enabling, and lacking specification support; and under 35 U.S.C. § 103 as being just an obvious combination of prior technology or "prior art." See April 20, 1995 Office Action, pp. 2-8.

18. On October 17, 1995, Lockwood filed an amendment to the '270 Application ("'270 Amendment") changing the title of the application to "Automatic Business and Financial Transaction Processing System," deleting certain claims and adding other claims in response to the examiner's rejection. As to the 103 prior art rejection, Lockwood's '270 Amendment stated that the claimed system had:

> the novel capability of processing the answer given by the operator in combination with prior answers and other data to formulate or compose a new inquiry, or a response; and *to make on-site decisions* about the next operational step. The net effect and result being the operator's responses create *a highly individualized, unique, 'one-of-a-kind' question and answer presentation*.
> September 19, 1995, Amendment, pp. 8-9 (emphasis added).

19. In short, Lockwood's '270 Amendment argued that the claimed system included an *on-site* terminal or kiosk which had the "intelligence" or processing capability to present a highly individualized, unique, "one-of-a-kind" question and answer presentation to the user as one would need in a complex transaction, such as application for a loan. Lockwood argued that this concept could

be found in the "<u>means for fetching additional inquiring sequences</u>" of Claim 1, which was a required feature or limitation of the terminal according to Claim 1. See September 19, 1995 Amendment, p. 10 (emphasis added).

20. In response to Lockwood's amendments and arguments, the USPTO's examiner once again rejected the application under 35 U.S.C. § 112; and under 35 U.S.C. § 103 for being unpatentable due to being a combination of prior art.

21. Lockwood appealed the USPTO examiner's final rejection to the USPTO's Board of Patent Appeals and Interferences "(the "Board"); and filed an Appeal Brief on June 27, 1996 (the "Appeal Brief"). In this Appeal Brief, Lockwood introduced the well-known concept of "forward chaining" for the first time in order to argue that the claimed invention was more than a combination of prior art. Specifically, Lockwood's Appeal Brief argues:

> The instant invention employs a type of problem solving technique known in the art as "forward-chaining" ("IBM Dictionary", page 285). *<u>Forward-chaining is a way to emulate human deductive or data-driven reasoning</u>* . . . **Forward-chaining** is generally associated *<u>with knowledge bases that have large numbers of possible solutions</u>*, and are frequently used when data is the starting point for solving a problem. *<u>Examples of applications that are associated with forward-chaining are planning, designing and forecasting.</u>*
> Appeal Brief, pp. 30-31

22. Additionally, Lockwood distinguished the '270 Application's claims from the prior art by asserting that the prior art only taught menu systems that operated in a rigid, "pre-ordained" manner. See Appeal Brief, pp. 22-23. In contrast to the "rigid, pre-ordained," menu systems described in the prior art references, Lockwood argued that his claimed invention had ability to dynamically "interact" with a customer, via a simulated loan officer displayed on a screen, rather than follow such rigid search and retrieval routines "and through which the user could be provided only with the exact thing that he had entered on the keypad." See Appeal Brief, pp. 25-26.

23. The USPTO's examiner filed an answer to the appeal; and in response, Lockwood filed a supplemental brief including an expert's declaration. On September 27, 2000, the Board reversed the examiner's rejection for two reasons, including, in pertinent part, their belief that "the examiner has failed to establish a *prima facie* case of obviousness with regard to claimed subject matter." BPAI Decision on Appeal, Appeal No. 1997-2678, Sep. 27, 2000, pp. 7-8. Thus, the '319 Patent issued on September 11, 2001.

24. On May 5, 2003, a third party filed a request for *ex parte* reexamination of certain claims of the '319 patent (US Control No. 90/006,623). The USPTO's reexamination examiner rejected all of the '319 Patent's claims under 35 U.S.C. 102, as being nothing more than existing technology; and under 35 U.S.C. § 103, as being a combination of existing technology, based on new prior art references submitted with the reexamination request. In response, Lockwood filed an amendment to the '319 Patent adding 22 new dependent claims. In doing so, Lockwood argued that with respect to the 102 and 103 rejections the newly cited prior art was no better than the previous cited art and argued:

> What distinguishes the structure recited in Claim 1 from Lockwood and from the above cited prior art is first, the architecture of the system, and second, *the novel and non-obvious ability of the terminal to formulate independently from the central processor, intelligent inquiries* based on a combination of prior and newly acquired information.
> May 16, 2005, Amendment and Response, pp. 6-7.

25. Lockwood also argued that in the newly cited prior art: "All inquiries *are formulated by the mainframe and simply displayed* on the terminal video screen at the store." May 16, 2005, Amendment and Response, p 8 (emphasis added). In other words, in order to get around the rejection, Lockwood characterized his concept as requiring the subject terminal to make the intelligent decisions itself – not the mainframe computer or server.

26. After an additional rejection and further supplemental submissions, Lockwood was ultimately successful in convincing the USPTO examiner that the cited prior art was no better than the previously cited prior art; and therefore, the old claims were confirmed and the new claims were allowed. The reexamination certificate was issued on July 17, 2007.

27. On September 14, 2012, another third party filed a second request for *ex parte* reexamination of certain claims of the '319 Patent (US Control No. 90/006,623). Although the '319 patent's claims were ultimately re-confirmed, this examiner went into a lengthy claim construction analysis of a critical element of claim 1 to support his reasons for confirmation. This examiner stressed the fact that "as stated by the Federal Circuit, claims must be construed in light of the intrinsic evidence which includes the claim, the written description *and the prosecution history*. See Notice of Intent to Issue Ex Parte Reexamination Certificate - Statement of Reasons for Patentability and/or Confirmation, Dec. 18, 2012, page 4 – (emphasis added).

28. Additionally, in a section titled, "Claim Language Interpretation," the Examiner explained how he interpreted the elements of Claim 1:

> <u>the "means-plus-function" limitation "means for fetching additional inquiring sequences in response to a plurality of said data entered through said means for entering and in response to information received from said central processor" is now interpreted to require the function</u> . . . [a terminal] programmed to fetch additional inquiring sequences such as additional questions or options to a user in response to user entry of data and information receipt from the central processor, <u>*i.e. "forward chaining"*</u> in response to user entry of data and information receipt from the central processor <u>*as characterized by the Patent Owner*</u>.
> *Id.*, page 7 – (emphasis added)

29. Thus, while the second reexamination confirmed the patentability of Claim 1 of the '319 Patent, the scope of Claim 1 was clearly interpreted as requiring the use of "forward chaining" performed at the terminal "as characterized by the patent owner." This claim interpretation is clear

from the record. As limited by this claim element interpretation of Claim 1, a reexamination certificate issued on January 9, 2013.

### E. The '319 Patent's Only Independent Claim

30. The sole remaining independent claim of the '319 Patent, Claim 1 reads as follows:

> 1. An automatic data processing system for processing business and financial transactions between entities from remote sites which comprises:
>
> *a central processor* programmed and connected to process a variety of inquiries and orders transmitted from said remote sites;
>
> said central processor including:
>
> means for receiving information about said transactions from said remote sites;
>
> means for retrievably storing said information;
>
> *at least one terminal at each of said remote sites* including a data processor and operational sequencing lists of program instructions;
>
> means for remotely linking said terminal to said central processor and for transmitting data back and forth between said central processor and said terminal;
>
> *said terminal further comprising* means for dispensing information and services for at least one of said entities including:
>
> a video screen;
>
> means for holding operational data including programing, informing, and inquiring sequences of data;
>
> means for manually entering information;
>
> means for storing information, inquiries and orders for said transactions entered by one of said entities via said means for manually entering information, and data received through and from said central processor;
>
> on-line means for transmitting said information, inquiries, and orders to said central processor;

> on-line means for receiving data comprising operator-selected information and orders from said central processor via said linking means;
>
> means for outputting said informing and inquiring sequences on said video screen in accordance with preset routines and in response to data entered through said means for entering information;
>
> means for controlling said means for storing, means for outputting, and means for transmitting, *including means for fetching additional inquiring sequences* in response to a plurality of said data entered through said means for entering and in response to information received from said central processor;
>
> said informing sequences including directions for operating said terminal, and for presenting interrelated segments of said operational data describing a plurality of transaction operations;
>
> said programming sequences including means for interactively controlling the operation of said video screen, data receiving and transmitting means; and for selectively retrieving said data from said means for storing;
>
> said means for storing comprising means for retaining said operational
>
> sequencing list and means responsive to the status of the various means for controlling their operation;
>
> said central processor further including:
>
> means responsive to data received from one of said terminals for immediately transmitting selected stored information to said terminal; and
>
> means responsive to an order received from a terminal for updating data in said means for storing;
>
> whereby said system can be used by said entities, each using one of said terminals to exchange information, and to respond to inquiries and orders instantaneously and over a period of time.

'319 Patent, Claim 1 (emphasis added).

31.   Accordingly, in order to infringe the claims of '319 Patent, if it were valid, which Collin Street Bakery does not concede, Collin Street Bakery would have to use a system which includes ALL of the above claim elements of Claim 1.  Specifically, in addition to the

other numerous claim elements, the system would have to use a "means for fetching additional inquiries" which, as explained above, must include the use of a dynamic and sophisticated forward chaining analysis performed at the terminal. Accordingly, an infringing party must utilize much more than a predetermined menu tree system when potential customers contact their website.

### F. Collin Street Bakery's Website Does Not Infringe the '319 Patent

32. Collin Street Bakery markets and sells its products online through its website www.collinstreet.com; and ships products to customers who place orders. In order for a customer to access www.collinstreet.com, the customer (or the computer manufacturer) must first choose to install third party internet browser software (such as: Explorer, Firefox, or Safari) onto the customer's computer or device. A customer can then "visit" Collin Street Bakery's website by typing a URL into a text box of the browser. This customer action causes the customer's internet browser to send a request to the third-party's web server which hosts Collins Street Bakery's website via a standard internet connection. In response to the request from the customer's browser, a third-party web server causes Collin Street Bakery's simple menu driven website to be displayed onto the customer's device. The customer then interacts with the rigid, pre-ordained menus displayed on the customer's devices in order to select and order products.

33. Collin Street Bakery's websites are hosted at a third party's web server farm which, in turn, communicates with Collin Street Bakery's "back office" computers when necessary. Collin Street Bakery does not own, operate, or host its own web servers nor a web server farm. Furthermore, Collin Street Bakery obviously does not own, operate or control any of its customer's computers or mobile devices used to access its websites. Moreover, said computers and mobile devices, which the '319 Patent would call terminals, do not utilize any dynamic and sophisticated

forward chaining analysis when interacting with Collin Street Bakery's websites. In fact, no server, computer, or device uses forward chaining technology in any way when interacting with Collin Street Bakery's websites.

34. Landmark alleges that Collin Street Bakery's servers constitute an infringing use of Claim 1 of the '319 Patent when customers use devices (i.e. terminals) to interact with Collin Street Bakery's web servers. Collin Street Bakery does not infringe any valid and enforceable claim of the '319 Patent for reasons including, but not limited to, the fact the terminals (i.e., customer devices) accessing Collin Street Bakery's websites are not owned nor used by Collin Street Bakery. Additionally, even if such terminals were owned or used by Collin Street Bakery, such terminals do not utilize any forward chaining technology, which is required by Claim 1 of the '319 Patent; and no server, computer or device associated with Collin Street Bakery uses forward chaining technology at all, which is required by Claim 1 of the '319 Patent.

### Count I - Declaration of Non-Infringement
### (U.S. Patent No. 6,289,319)

35. Collin Street Bakery restates and incorporates by reference the allegations in paragraphs 1 through 32 of this Complaint as if fully set forth herein.

36. Collin Street Bakery has not infringed and does not infringe any valid and enforceable claim of the '319 Patent, whether literally or under the doctrine of equivalents. Additionally, Collin Street Bakery is not liable for any induced, contributory, divided, or other indirect infringement of any valid and enforceable claim of the '319 Patent. Neither Collin Street Bakery, nor its customers who access its website, nor anyone associated with Collin Street Bakery, utilize all of the elements of the claims of the '319 Patent.

37. There exists a substantial, real and immediate controversy between Collin Street Bakery and Landmark concerning Collin Street Bakery's alleged infringement of the

'319 Patent, which Collin Street Bakery denies; and this controversy warrants the issuance of a declaratory judgment. The controversy arises from Landmark's Demand Letter to Collin Street Bakery claiming that Collin Street Bakery infringes at least claim 1 of the '319 Patent; and providing Collin Street Bakery the option to pay for a license to Landmark's patent portfolio, including the '319 Patent, within fifteen (15) days of the Demand Letter being sent or be sued. Landmark's Demand Letter alone, and in combination with Landmark's widespread campaign of filing patent infringement lawsuits against licensing targets that refuse to pay the license fee Landmark demands, clearly demonstrates Landmark's intent to seek to erroneously enforce the '319 Patent against Collin Street Bakery.

38. Thus, a judicial declaration is necessary and appropriate so that Collin Street Bakery may ascertain its rights regarding the '319 Patent. Collin Street Bakery therefore seeks a judicial declaration that Collin Street Bakery does not directly, or indirectly, or otherwise infringe any valid and enforceable claim of the '319 Patent.

WHEREFORE, PREMISES CONSIDERED, Collin Street Bakery respectfully requests the following relief:

A. A declaration that Collin Street Bakery has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of the '319 Patent, whether literally or under the doctrine of equivalents;

B. An order declaring that this is an exceptional case and awarding Collin Street Bakery its costs, expenses, disbursements and reasonable attorneys' fees under 35 U.S.C. § 285; and

C. All such other and further relief, both at law and in equity, which this Court deems just and proper.

Respectfully submitted,

**HIERSCHE, HAYWARD, DRAKELEY & URBACH, P.C.**


By: */s/ Craig A. Harris*
    Craig A. Harris
    Texas State Bar No. 09056750
    Jacob L. McBride
    Texas State Bar No. 24070231

15303 Dallas Parkway, Suite 700
Addison, Texas 75001
Phone:   (972) 701-7000
Fax:   (972) 701-8765
Email:   charris@hhdulaw.com;
         jmcbride@hhdulaw.com

AND

Bill R. Naifeh
Texas Bar No. 00788103
Law Offices of Bill R. Naifeh
15303 Dallas Parkway, Suite 700
Addison, Texas 75001
Phone:   (972) 726-9500
Email:   Litigation@naifeh.com

**ATTORNEYS FOR PLAINTIFF,
COLLIN STREET BAKERY, INC.**